IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

RUTHIE GAUSE                                                                PLAINTIFF

v.                                  NO. 2:08CV00099 HDY

MICHAEL J. ASTRUE,                                                      DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. The record reflects that in May of 2004, plaintiff Ruthie Gause ("Gause") filed applications for widow's insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her applications were denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In February of 2007, the ALJ issued a decision adverse to Gause. She appealed the adverse decision to the Appeals Council. The adverse decision was affirmed by the Appeals Council and therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In May of 2008, Gause commenced the proceeding at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Commissioner.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012.

THE COMMISSIONER'S FINDINGS. The Commissioner made findings pursuant to the five step sequential evaluation process. At step one, the Commissioner found that Gause has not engaged in substantial gainful activity since the alleged onset date.[1] At step two, the Commissioner found that Gause has the following severe impairment: mild degenerative disc disease of the lumbar spine, specifically "mild degenerative changes of the lower lumbar spine, mild osteophyte formation at L3-L4 and L4-L5, and mild degenerative facet changes at L4 through S1 ..." See Transcript at 20. At step three, the Commissioner found that Gause does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The Commissioner then assessed Gause's residual functional capacity. The Commissioner found that Gause retains sufficient residual functional capacity to perform the exertional requirements of a wide range of light work activity. In so finding, the Commissioner specifically found the following:

---

[1] As a preliminary matter, the Commissioner found that Gause is "the surviving spouse of the wage earner, who died fully insured on January 8, 2003, and [Gause] has not remarried." See Transcript at 20.

> [Gause] has the residual functional capacity to perform work-related activities except for work involving lifting more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday; and sitting with normal breaks for a total of about 6 hours in an 8-hour workday ... In addition, [she] would have to alternate between sitting and standing every 45 minutes. She could only occasionally climb, balance, stoop, bend, crouch, kneel and crawl. She would have to avoid exposure to temperature extremes and vibrations, and should avoid working around safety hazards such as unprotected heights, dangerous moving machinery, the operation of motor vehicles, and use of firearms. In addition, due to a combination of pain and effects of medications, her ability to maintain concentration, persistence, and pace throughout an eight-hour workday would be slightly affected. Further, [she] would experience mild to moderate pain (amenable to control by over-the-counter or other medications, without adverse side effects).

See Transcript at 20. The Commissioner bypassed step four–which requires the Commissioner to determine whether the claimant can return to her past relevant work–because Gause has no past relevant work. At step five, the Commissioner found that, considering Gause's residual functional capacity, age, education, and work experience in conjunction with the testimony of a vocational expert, there are jobs that exist in significant numbers in the national economy that Gause can perform. Given that finding, the Commissioner concluded that Gause is not disabled within the meaning of the Act.

GAUSE'S ALLEGATIONS OF ERROR. Are the Commissioner's findings supported by substantial evidence on the record as a whole? Gause thinks not and advanced several reasons why. In response, the Commissioner noted the following:

> [Gause's] brief is difficult to follow as she mixes issues distinct to specific steps in the sequential evaluation process. Consequently, the Commissioner's responses to [Gause's] points of alleged error will not follow the order of [her] arguments. The Commissioner will respond to [her] arguments in the order the underlying issues are generally addressed in the sequential evaluation process. ...

See Document 9 at 5. The Court agrees with the Commissioner's characterization of Gause's brief. For the sake of simplicity, the Court will do as the Commissioner did and address her allegations of error in the order they generally arise in the sequential evaluation process.

GAUSE'S IMPAIRMENTS. Gause first maintains that the Commissioner erred in finding that she does not have an impairment or combination of impairments that meet or equal a listed impairment. At step two, the Commissioner is obligated to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "'more than a minimal effect on the claimant's ability to work.'" See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)]. At step three, the Commissioner is obligated to determine whether, when considered individually and collectively, the impairments meet or equal a listed impairment. See Sullivan v. Zebley, 493 U.S. 521 (1990); Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determinations at those steps are medical ones. See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three).

The Commissioner found that Gause's back condition is a severe impairment but that it does not meet or equal a listed impairment. With regard to her other alleged impairments, e.g., a stomach problem, neck and shoulder pain and/or spasms, hypertension, arthritis, and anxiety, the Commissioner found that they are not supported by the medical evidence or are otherwise controlled by medication. The Commissioner's findings are supported by substantial evidence on the record as a whole.

With regard to Gause's back condition, the medical evidence indicates that her condition has more than a minimal effect on her ability to work and is thus severe for purposes of the Act. There is no medical evidence to indicate, however, that her condition meets all of the specified medical criteria. See Marciniak v. Shalala, 49 F.3d 1350, 1353 (8th Cir. 1995).

With regard to Gause's stomach problem, it is true that she complained of abdominal bloating and/or pain on several occasions. See Transcript at 158, 179, 211, 227. Several attempts were made to isolate the problem, including testing in the form of an upper gastrointestinal tract radiography, a "small bowel follow through," and an abdominal ultrasound. The results were normal. It appears that at one point she was prescribed medication for her stomach problem. There is nothing to indicate that the medication was ineffective or that she took it for any length of time. It is also worth noting that her treating physician, Dr. Scott A. Hall ("Hall"), does not believe her stomach problem to be significant. See Transcript at 253.

With regard to Gause's neck and shoulder pain and/or spasms, it is true that she complained of pain and/or spasms on several occasions. See Transcript at 156, 228, 229. An x-ray of her neck and shoulder was taken in November of 2004, and the results were negative. See Transcript at 168. It is true, as she alleges, that an MRI of her neck and/or shoulder has not been taken, but there is nothing to indicate that the results of an MRI would be different than the results of the x-ray. It appears that at one point she was prescribed medication for her pain and/or spasms. There is nothing to indicate that the medication was ineffective or that she took the medication for any length of time.

With regard to Gause's hypertension, it is true that it has been a problem since at least November of 2001. See Transcript at 247. Hall prescribed Lotrel, and she appears to have taken it for some time. There is nothing to indicate that her hypertension is not controlled by Lotrel, and it is axiomatic that "[a] medical condition that can be controlled by treatment is not disabling." See Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989). She apparently complained that her hypertension caused headaches, but she has not cited the Court to any medical evidence to support the existence of her headaches.[2] It is also worth noting that Hall does not believe her hypertension to be significant. See Transcript at 253.

---

[2] The lack of medical evidence supporting the existence of an impairment is a relevant consideration at steps two and three as those steps are solely medical determinations. The lack of medical evidence is, however, just one factor to be considered in evaluating a claimant's credibility and subjective complaints pursuant to Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). See Herbert v. Heckler, 783 F.2d 128 (8th Cir. 1986).

With regard to Gause's arthritis, it is true that she complained on at least two occasions of symptoms associated with arthritis. See Transcript at 263, 269. The record contains no medical evidence to support the existence of arthritis. It is also worth noting that Hall does not believe her arthritis to be significant. See Transcript at 253.

With regard to Gause's anxiety, it is true that Hall diagnosed her with an anxiety disorder on at least two occasions. See Transcript at 202, 252. Like her arthritis, though, the record contains no medical evidence to support the existence of the disorder.

Given the foregoing, substantial evidence on the record as a whole supports the Commissioner's findings that Gause's only severe impairment is her back condition but that it does not meet or equal a listed impairment. Substantial evidence on the record as a whole also supports the Commissioner's findings discounting the severity of her other alleged impairments.

GAUSE'S RESIDUAL FUNCTIONAL CAPACITY. Gause next maintains that her residual functional capacity was erroneously assessed. Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)]. The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." See Id. at 539 [citing Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003)].

The Commissioner found that Gause retains sufficient residual functional capacity to perform the exertional requirements of a wide range of light work activity. In so finding, the Commissioner discounted Hall's opinion that Gause is totally disabled and discounted Gause's complaints of pain. The Commissioner's findings are supported by substantial evidence on the record as a whole.

With regard to Hall's opinion that Gause is totally disabled and unable to work, the record contains the following notes from Hall:

(1) In February of 2003, Hall signed a note that provided the following: "[Gause] is under my care and is totally disabled." See Transcript at 238.

(2) In February of 2005, Hall signed a note that provided the following: "[Gause] was seen in my office on this date. [She] is still disabled at this time and continues to be off duties under my care." See Transcript at 267.

(3) In April of 2006, Hall signed a note that provided the following: "[Gause] is under my care. She is totally disabled and unable to ride a long distance due to her Disc Degenerative Disease." See Transcript at 251.

(4) In August of 2006, Hall signed a note that provided the following: "[Gause] is under my care. She is totally disabled and unable to work due to Disc Degenerative Disease. She needs to LIMIT TIME SPENT WITH CHILDREN AND FAMILY. She needs rest due to her anxiety disorder and muscle spasms." See Transcript at 252.

During the administrative hearing, the ALJ and Gause's attorney had the following exchange regarding Hall's notes:

> ALJ: ... This, the troubling thing in this matter is Dr. Hall obviously believes that ... Gause is disabled.
>
> ATTY: Yes, sir.
>
> ALJ: And he's been kind enough to send in a few letters, or several letters, to that effect. Would it be possible, maybe, to ask him if, if he could send a letter that would set forth, perhaps, a few more objective findings as to why he believes she's disabled?
>
> ATTY: Yes. Judge, I always like to, to get them to do that and I always try and tell them what they have to do. But a lot of times they're so busy, they don't, they just think they can do it with just that letter and that's why these records make him show that, I don't know this will say it in the record, but I'll try and get that for you. ...
>
> ALJ: Okay, let's, let's hold it open for 30 days and see if you can get something more definitive from Dr. Hall. ...

See Transcript at 313-314.

Six days after the conclusion of the administrative hearing, Hall signed a note that provided the following:

> I have provided medical treatment to ... Gause regarding her medical conditions. The following is a list of [her] conditions that relate to her health injuries:

-9-

>   1. Disc Degenerative Disease
>   2. Anxiety
>   3. Muscle Spasms
>
>   It is my opinion based upon the above injuries and her age, education and work experience, that ... Gause is unable to [engage] in any substantial gainful employment because of the above medical conditions for a period of time lasting and expecting to last for a period of twelve months.  This opinion is based upon the X-rays that were taken of ... Gause.  I hope this is helpful for ... Gause, due to the fact that she has serious health conditions that preclude her doing any type of work.

See Transcript at 253.

The Commissioner nevertheless discounted Hall's opinion of Gause.  The Commissioner did so because the opinion was "not supported by his own medical records or any other medical records in the file."  See Transcript at 16.

The Court readily acknowledges that the Commissioner's treatment of Hall's opinion is the most troubling aspect of this proceeding.  Although his opinion is not automatically controlling because the record must be evaluated as a whole, his opinion is to be given controlling weight if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) [quoting 20 C.F.R. § 404.1527(d)(2)].   For the reasons that follow, though, the Commissioner properly discounted Hall's opinion.

First, it appears as if Hall's opinion was written simply to conform to the requirements of the Act. The opinion tracks the definition of disability found in the Act and purports to be based, in part, upon his knowledge of Gause's education, work experience, and the activities required of all types of work. There is nothing in the record to indicate that he knows of either her education or work experience. In addition, there is nothing in the record to indicate that he knows of the activities required of all types of work.

Second, Hall's opinion contains a conclusion, i.e., Gause's medication condition precludes her from doing any type of work, that is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. The only findings Hall offers to buttress his conclusion are the "X-rays that were taken of ... Gause." See Transcript at 253. He failed, however, to indicate which x-rays he relied upon in offering the conclusion. The Court certainly has no idea.

Third, Hall's opinion is not consistent with the other substantial evidence in the record. While it is true that the opinion is consistent with other conclusions, the other conclusions were also offered by Hall and are not supported by any medical evidence whatsoever; they are mere conclusions. Having reviewed the evidence in the record, the Commissioner could and did instead find that the evidence is such that Gause has a severe back impairment that limits her ability to function but is not so limiting that she is disabled for purposes of the Act.

Having found that the Commissioner properly discounted Hall's opinion, what evidence supports the Commissioner's finding as to Gause's residual functional capacity? The record reflects that the Commissioner relied, in part, upon the results of a physical residual functional capacity assessment, see Transcript at 190-201, and a consultative examination performed by Dr. Vijaybhasker K. Reddy ("Reddy"). See Transcript at 160-167. The results of Reddy's examination were largely normal, although he did note that Gause had a slight decrease in the range of motion in her spine. Although a consulting physician's medical opinion is given only limited weight, see Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984), it is something that the Commissioner can, and in this instance did, rely upon.

With regard to Gause's complaints of pain, the Commissioner considered them in accordance with the factors outlined in Polaski v. Heckler, 739 F.2d 943 (8th Cir. 1984), and Social Security Ruling 95-5p. The Commissioner discounted her complaints because they were not borne out by the overall record and were not fully credible. The Commissioner specifically found that Gause has a poor work record; that the medical evidence does not support her claim of severe pain; that she sought only minimal medical treatment; that the medications she takes, although causing mild dizziness and drowsiness, causes no more than a minimal affect on her ability to work; and that her daily activities are "entirely inconsistent with the rather limited medical findings reflected in the record." See Transcript at 17.

In <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001), the Court of Appeals provided the following guidance in evaluating a claimant's complaints of pain:

> It is the [Commissioner's] responsibility to determine a claimant's [residual functional capacity] based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of [her] limitations. [Citation omitted]. Before determining a claimant's [residual functional capacity], the [Commissioner] first must evaluate the claimant's credibility. In evaluating subjective complaints, the [Commissioner] must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; duration, frequency and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984).

"The [Commissioner] is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered." See <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004).

The Court has thoroughly examined the record in this proceeding. The Commissioner cited the relevant authority and engaged in a brief discussion of the <u>Polaski</u> factors. Although the Commissioner's treatment of each factor was not extensive, the Court is satisfied that the treatment was adequate and is supported by substantial evidence on the record as a whole. Specifically, the Commissioner made note of evidence in the record that related to each factor and why the evidence tended to lessen Gause's credibility as to the severity of her complaints of pain.

Given the foregoing, substantial evidence on the record as a whole supports the Commissioner's finding that Gause retains sufficient residual functional capacity to perform the exertional requirements of a wide range of light work activity. Specifically, substantial evidence on the record as a whole supports the Commissioner's treatment of Hall's opinion of Gause and the treatment of her complaints of pain.

STEP FIVE. Gause last maintains that the Commissioner erred at step five in two respects. First, she appears to maintain that the Commissioner relied upon the Guidelines, or Grids, even though she has non-exertional impairments.[3]

The Commissioner may not rely upon the Grids if the claimant suffers from non-exertional impairments that diminish or significantly limit the claimant's residual functional capacity. See Ellis v. Barnhart, 392 F.3d 988 (8th Cir. 2005). Instead, the Commissioner must obtain the opinion of a vocational expert.

The Court has thoroughly reviewed the record and can find nothing to indicate that the Commissioner relied upon the Grids at step five. Instead, the record reflects that the Commissioner solicited and relied upon the testimony of David Elmore, a vocational expert, at step five.

---

[3] Specifically, Gause maintains the following: "In this case, [Gause's] non-exertional impairments do significantly diminish her residual functional capacity to perform a wide range of unskilled light work and therefore the [Commissioner] cannot rely on the guidelines to direct a conclusion of disabled or not disabled without resorting to vocational expert testimony since [Gause's] non-exertional limitations do significantly affect her [residual functional capacity]." See Document 7 at 8.

Second, Gause maintains that the Commissioner's hypothetical questions were not complete. She specifically maintains that the Commissioner presented three questions that "omitt[ed] a lot of crucial exertional and non-exertional limitations." See Document 7 at 16.

"'[T]estimony from a vocational expert is substantial evidence [on the record as a whole] only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" See McKinley v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000) [quoting Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997)]. The question need not contain every impairment alleged by the claimant, see Haggard v. Apfel, 175 F.3d 591 (8th Cir. 1999), but it must include the impairments supported by substantial evidence on the record as a whole. See Goff v. Barnhart, 421 F.3d 785 (8th Cir. 2005).

As a preliminary matter, the Court notes that Gause objects to the hypothetical questions because the Commissioner omitted "a lot of crucial exertional and non-exertional limitations." See Document 7 at 16. She failed, however, to specify what crucial exertional and non-exertional limitations were omitted.

Notwithstanding the foregoing, the Court has carefully reviewed the hypothetical questions posed to the vocational expert. See Transcript at 308-312. The Court is satisfied that the second question in particular was correctly phrased in that it captured the concrete consequences of Gause's deficiencies.

CONCLUSION. Given the foregoing, the Court is satisfied that substantial evidence on the record as a whole supports the Commissioner's findings. Specifically, the Commissioner could and did find that Gause does not have an impairment or combination of impairments that meet or equal a listed impairment; that she retains sufficient residual functional capacity to perform the exertional requirements of a wide range of light work activity; and that the hypothetical questions, particularly the second questions, were properly phrased. Her complaint is dismissed, and all requested relief is denied. Judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___2___ day of July, 2009.

_____
UNITED STATES MAGISTRATE JUDGE